Samuel M. Gold, J.
This is a special proceeding pursuant to paragraph (1) óf .subdivision (a) of section 1008 of the Not-For-Profit Corporation Law (“ N-PCL ”) brought by the daughter of the late Lester Martin, creator of The Martin Foundation, Inc., to vacate the order of dissolution of the foundation. The widow of Lester Martin has moved for leave to intervene, also urging vacatur of the order of dissolution; or, if the court determines not to vacate the order, granting her leave to be heard upon the adequacy and nature of the plan of distribution of the assets of the foundation (N-PCL, § 1008, subd. [a], par. [8]).
The petition for dissolution was made and verified on January 7, 1972, by the daughter as the president of the foundation. It was in the statutory form (N-PCL, § 1003) for a voluntary or nonjudicial dissolution. There was annexed an excerpt of the minutes and resolutions adopted at a special meeting of the members and board of directors held on December 2,1971, certified by the daughter’s husband as secretary of the foundation, stating that the daughter had submitted her resignation as president and director, and that her husband had submitted his resignation as secretary, director and member, both ‘ ‘ effective upon the approval by the Supreme Court of the Decree of1 Dissolution of The Martin Foundation, Inc.”; and that a plan of dissolution and distribution of assets, which had the approval of the Attorney-General of the State of New York, was adopted at said meeting.
The plan of distribution, however, did not provide for distribution of specific sums of money to identified nonprofit institutions or organizations. The principal asset of the foundation is a controlling block of .stock in a public corporation. The plan was to make arrangements for the sale of the stock and distribution of the proceeds or of the stock itself in kind to ‘ ‘ spme ten charities ’ ’ within a period of 12 months from date of approval by the Supreme Court of the plan, to “ such organizations ” having tax exempt status, “ including a Church, School, Hospital, Fund Raiser for a school, a State and subdivisions thereof, or a Publicly Supported Charity that has been in existence at least five years ’ ’.
There was indorsed on the petition the requisite signed statement of the Attorney-General that he had no objection to judi *987 cial approval of the application and waived statutory notice thereof.
The order dated January 20, 1972 granted the application to the extent of allowing dissolution, but provided that approval of the court was required before any distribution of assets could be made, jurisdiction being retained for that purpose.
Ten months later, as the directors are proceeding to take definite steps for the sale of the block of stock and to effectuate the plan of distribution, this special proceeding to vacate the order of dissolution has been instituted by the daughter. Vacatur is requested on the alleged ground that the daughter executed the petition for dissolution under duress and intimidation exerted by the office of the Attorney-General and that, in any event, dissolution is contrary to the intent and purposes of her father and the foundation should be permitted to continue.
A formal objection to the order has also been interposed. Sections 1001, 1002 and 1003 of the N-PCL refer to a “ plan of dissolution and distribution of assets ”. It is urged that, in the absence of a specific plan of distribution, the order granting dissolution was unauthorized. Here, in view of the special circumstances relating to the block of stock referred to, requiring protracted arrangements for its sale or disposition, the plan of distribution did set forth the categories of the proposed nonprofit distributees, with the names and amounts to be distributed to each to be provided when those arrangements, within a period of 12 months of approval of the plan of distribution, were consummated. Since the court retained jurisdiction and directed that distribution could not be made until court approval had been obtained, the entire proceedings before the court, encompassing both dissolution and distribution, will constitute an integrated “ plan of dissolution and distribution of assets ”. There is no reason to disapprove a plan of dissolution and distribution of assets merely because, in a special situation, liquidation requires a step-by-step process.
Turning to the issues, it is clear from the complete presentations made by the respective parties that there are no triable disputed issues of fact but merely a difference as to inferences, conclusions and legal remedies. The court therefore, 11 shall make a summary determination ’ ’ of this special proceeding. (CPLR 409, subd. [b].)
The foundation was formed in 1946 by Lester Martin, his wife, and his father, as incorporators. Lester Martin died in 1959. His will gave one half of the residuary estate to the widow and the remaining one half to the foundation. Acrimonious litiga *988 tion ensued. A settlement was reached in 1963, whereby the foundation was given the control stock and the widow agreed to resign as an officer and director of the foundation. The daughter and her husband were thereafter in control of the administration of the foundation and, through it, of the controlling block of stock.
In December, 1966, the Internal Revenue Service commenced an investigation affecting the tax-exempt status of the foundation. The investigation continued over the years. Finally, in September, 1971, the Service forwarded a “ technical advice memorandum ”, analyzing in detail a number of allegedly objectionable practices and acts, with the conclusion that the tax-exempt status of the foundation would not be disturbed.
The Attorney-General of this State had in the meantime been conducting his own investigation of the foundation. The widow states, and the Attorney-General confirms, that she repeatedly complained to the office of the Attorney-General of improprieties in the administration of the foundation. In March, 1970, attorneys retained by the widow submitted to the Attorney-General a 21-page report of an investigation conducted by them because she “ has become increasingly concerned that the intent of her late husband in establishing the Foundation and its charitable objects are, since his death, being defeated by those who control it.” This report furnished factual details of self-dealings by the daughter and her husband, particularly in their control of the public corporation, for their own personal benefit at the expense of the charitable purposes of the foundation. The Attorney-General was urged to intervene and exercise his powers of supervision with respect to New York charities.
The Attorney-General’s investigation revealed basic conflict of interest and self-dealing practices, such as the holding of valuable corporate positions by reason of the continued retention by the foundation of the controlling block of stock, resulting in limited benefits to charity because of the extremely low dividends paid by that corporation. In this connection, it may be noted that the daughter refers in her papers to the ouster, since the events here involved, of her husband as chairman of the board and president of the public corporation. The Attorney-General has set forth in detail the various acts and practices complained of. He points out that his function goes beyond that of the tax collecting Internal Revenue Service, in that his duty and responsibility is to insure the proper administration of property devoted to charitable purposes for the benefit of the ultimate beneficiaries (EPTL 8-1.4).
*989 Sections 706 and 714 of the N-PCL authorize the Attorney-General to bring an action to remove a director or officer of a not-for-profit corporation for cause. Section 720 of the N-PCL authorizes the Attorney-General to bring an action against directors or officers of a not-for-profit corporation for an accounting where there has been a violation of their duties in the management or disposition of assets or in the acquisition by themselves, transfer to others, loss or waste of assets. Section 1102 of the N-PCL authorizes a petition by a director or member for judicial dissolution of a not-for-profit corporation when the directors or members in control ‘ ‘ have perpetuated the corporation solely for their personal benefit ”. Paragraph (7) of subdivision (a) of section 112 of the N-PCL authorizes the Attorney-General to bring an action or special proceeding to enforce any right given under the N-PCL to a director or member.
The Attorney-General states that it was concluded that two alternative courses of action were open. The first was to bring an action to compel an accounting by the daughter and her husband to seek the imposition of personal surcharges against them, as well as for dissolution of the foundation. This, it was believed, might have a detrimental effect upon the stock held by the foundation; it would obviously result in extensive and expensive litigation; and would postpone materially the devotion of the foundation’s assets to charitable purposes. The second course was to persuade the daughter and her husband to agree to a dissolution and liquidation of the foundation and disposition of its assets to charitable and educational institutions. The Attorney-General, at conferences held on July 7, 1970, December 22, 1970, April 20, 1971, May 5, 1971 and July 21, 1971, with attorneys and special counsel acting on behalf of the foundation and its directors and officers, discussed these alternative courses of action, pointing out that, if the Internal Eevenue Service ruled unfavorably on the tax status, he would have no option other than to institute court proceedings; and, therefore, the second course was available to the daughter and her husband only if the tax question was decided favorably.
During the course of these conferences the Attorney-General had persuaded the daughter and her husband to agree to add three well-known and public-spirited citizens as members, officers and directors, one being the nominee of the old group, the second the nominee of the Attorney-General, and the third by general agreement.
*990 On October 15, 1971, at a special meeting of the board of directors, the daughter, acting as chairman, and-her husband as secretary, signing the minutes, the board agreed that at a meeting scheduled with, the Attorney-General for October 27, 1971, the attorneys for the foundation would offer a plan of dissolution with a specified time limit for liquidation, it being noted that there were at that time no definite offers for the controlling block of stock.
The final agreement between the attorneys for the foundation and the Attorney-General was embodied in a letter dated November 10, 1971. The items therein enumerated were adopted at a special meeting of the members and board of directors held on December 2, 1971, excerpts of which, as earlier stated, are annexed to the petition for dissolution herein. It was at this meeting that the resignations of the daughter and her husband, effective upon approval by the court of the “ Decree of Dissolution ”, were submitted and the plan of dissolution and distribution .of assets adopted.
The daughter’s charge of duress and intimidation on the part of the Attorney-General in inducing her to execute the petition for dissolution is plainly without factual or legal support. She contends that she did not have the assistance of personal counsel. However, there can be no doubt as to the advice given to her as the most interested and influential member, officer and director of the foundation by the four eminent and separate firms of attorneys representing the foundation during the extended negotiations with the Attorney-General. Moreover, the attorney who instituted this .special proceeding on her behalf represented her as far back as the 1963 estate settlement and has been actually representing her from March, 1971 on in an action she and her husband brought against her mother and others relating indirectly to the activities of the foundation.
Since there was reasonable basis for the Attorney-General’.s threat of action against the daughter and her husband for damages and for the judicial dissolution of the foundation, there was no duress in the daughter’s agreeing to resign and to execute the petition for dissolution to avoid such lawsuit. The same elements substantially are involved in the' settlement of any bona fide claim or cause of action. The practical considerations suggested by the Attorney-General for giving that option to the. daughter are also indicative of his reasonable approach to the problem.
The daughter urges, further, that whether or not there were past self-dealing or errors in the past — and she denies that there *991 were — the real issue is concerned not with her responsibility or liability but rather with the continuance of her father’s foundation, pointing out that the “ likelihood of any self-dealing has been removed from the case because the Foundation is now entirely controlled by outside members,” whose continuance in office to administer the foundation she does not oppose.
The widow, whose application as an “ incorporator ” (N-PCL, § 1008) for leave to intervene is granted by the- court for the limited purpose herein indicated, also urges that the present dissolution and distribution plan is contrary to the intentions of her late husband, stating that, if in the past the foundation was mismanaged, new directors and officers have been appointed or could be appointed by the court to manage it properly.
The daughter states that the foundation was formed by her father “as a vehicle for family benefactions * * * our’s is a charity minded family”, and, therefore, the foundation’s dissolution and distribution of the assets to some 10 or 15 charities would be a “ perversion of my father’s intent.” The records of the foundation show donations over the years of widely varying amounts given to numerous charities and religious organizations and some educational and cultural institutions. The daughter states that this is in conformity with her father’s mode of giving on a “broad” and “selective” base.
The sum total, while fairly substantial, is, however, considerably less than what would have been available had the principal asset of the foundation not been tied up in the controlling block of stock, as well as by reason of the substantial legal expenses incurred in connection with the charges of maladministration.
It must be kept in mind that, since the public is a. substantial donor by virtue of estate and income tax exemption, foundation property must be devoted to public use, without regard to the personal benefit of those connected with foundations.
The certificate of incorporation of the foundation provides that its funds shall be applied “ exclusively for charitable, scientific, literary, religious and educational purposes ” and that upon dissolution, the property remaining shall be distributed “ in accordance with the purposes of the Corporation under the supervision of the Supreme Court of the State of New York.”
There is no basis for the contention that, somehow, charity and the public will suffer by the dissolution of the foundation and the distribution of its assets to operating charitable, educational and cultural institutions. The three public-spirited citi *992 zens, whose present administration of the foundation is not opposed, and who assumed that burden to work out a proper and effective plan of dissolution and distribution of assets, and, indeed, any group of public-spirited citizens, cannot possibly continue indefinitely to function on behalf of the foundation and, obviously, their selection of beneficiaries for individual donations on a day-to-day basis in attempted conformity with the founder’s mode of giving would be an impossible task.
Since the understanding is that appropriate provision will be made upon distribution to memorialize and perpetuate the name of Lester Martin and since the specific plan of distribution of assets is subject to the approval of the court, it should be clear that the intentions of Lester Martin, so far as permitted by current conditions, will be the determining factor.
Upon submission to Special Term, Part II, of this court of the specific plan of distribution of assets, three days ’ notice thereof shall be given to the daughter and to the widow, who may file objections in writing thereto at Special Term, Part II.
The petition is denied and the special proceeding is dismissed upon the merits.
Settle judgment accordingly.